AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT

I, JEREMY T. WIESEL, United States Postal Inspector, United States Postal Inspection Service, Washington Division, having been duly sworn, hereby depose and state as follows:

I. OBJECTIVE

This affidavit is presented in support of a criminal complaint against and arrest warrant for Lyndon A. Derouen (hereinafter "DEROUEN"), charging him with theft of government property, in violation of 18 U.S.C. § 641, and misappropriation of postal funds, in violation of 18 U.S.C. § 1711.

II. CREDENTIALS

The affiant is a United States Postal Inspector with the United States Postal Inspection Service, Washington, Division, with federal law enforcement powers.  I have been employed with the Postal Inspection Service for approximately two years, and I am currently assigned to the Financial Investigations/ Revenue Protection Team at the United States Postal Inspection Service's Capitol Heights, Maryland, Domicile.  My duties include, but are not limited to, the investigation of alleged violations of federal criminal statutes which involve the United States Postal Service and the preparation, presentation and service of criminal complaints, arrest and search warrants.

III. SOURCE OF EVIDENCE

Affiant is familiar with the facts and circumstances of this investigation.  All relevant events described herein occurred in the District of Columbia.  The information contained in this affidavit is based upon my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals including review of documents and videos related to this investigation, communications with others who have personal knowledge of the events

and circumstances described herein, and information gained through my training and experience. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrant, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause that the defendant named herein has violated the theft of government property and misappropriation of postal funds statutes.

## IV.  RELEVANT STATUTES

Title 18, United State Code, § 641, provides, in relevant part, that:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any . . . money, or thing of value of the United States or of any department or agency thereof [shall be guilty of this offense].

Title 18, United States Code, § 1711, provides, in relevant part, that:

> Whoever, being a Postal Service officer or employee . . . converts to his own use, or deposits in any bank, or exchanges for other funds or property, except as authorized by law, any money or property coming into his hands or under his control in any manner, in the execution or under color of his office, employment, or service, whether or not the same shall be the money or property of the United States; or fails or refuses to remit to or deposit in the Treasury of the United States or in a designated depository, or to account for or turn over to the proper officer or agent, any such money or property, when required to do so by law or the regulations of the Postal Service, or upon demand or order of the Postal Service, either directly or through a duly authorized officer or agent, is guilty of embezzlement[.]

Both statutes provide for felony punishment if the value of the money taken exceeds $1,000.

V.  FACTUAL BACKGROUND

1. On December 12, 2005, the United States Postal Inspection Service and the United States Postal Service, Office of Inspector General, initiated an investigation in this matter as a result of significant losses in the retail floor stock of the Friendship Station, Washington, D.C., Post Office, located at 4005 Wisconsin Avenue, N.W.  These losses were approximately $10,600.00 in the past year.  Analysis of the transactions for each of the Friendship Station Sales and Service Associates in the relevant database, known as "Retail Data Mart," during this period disclosed Sales and Service Associate "DBQ7Q0" had the highest percentage of "void" and "no-sale" transactions.  Further inquiry revealed the Sales and Service Associate with this log-on identification was DEROUEN.

2. The retail operation of the Friendship Station Post Office operates under a stamp inventory system known as "segmented inventory accountability."  While a traditional post office operation provides that each Sales and Service Associate is responsible for his or her own stamp stock, in a segmented inventory accountability environment, all the Sales and Service Associates work out of a common accountability known as the retail floor stock.  This retail floor stock is commonly referred to as the "treasure chest," as it is the only accountability besides the unit reserve.

3. The unit reserve is assigned to a Supervisor of Customer Service, who issues postage stock to the retail floor stock via a requisition form.  When issued, the accountability of the retail floor stock is increased by the amount of what was issued.  On a daily basis, this accountability is subsequently reduced by the value of postage reported as sold, so that when an inventory is conducted, the paper balance should match what is physically on hand.  The effect of a Sales and

Service Associate not reporting a stamp sale transaction properly would be that while his/her daily financial statement would "balance" at the end of the day, there would be a shortage to the inventory upon an audit of the floor stock.

    4. In an segmented inventory accountability environment, the cash register that is used is known as Point of Sale. All transactions reported in a Point of Sale environment are captured in U.S. Postal Service marketing Retail Data Mart database.

    5. The cash drawer on a Point of Sale machine is designed not to open unless there is a cash transaction. However there is a "no-sale" dyna-key which can be used to circumvent this feature. While sometimes legitimately used, the "no-sale" dyna-key is frequently utilized in embezzlement schemes in order to avoid the reporting of a cash transaction.

    6. On December 12, 2005, affiant made an undercover test purchase from DEROUEN at the Friendship Station Post Office. At approximately 11:36 a.m., affiant purchased one roll of $.37 stamps and one roll of $.23 stamps for a total of $60.00 with $60.00 given to DEROUEN by affiant, and affiant received no change or receipt from DEROUEN. Analysis of the Retail Data Mart database disclosed the two rolls of stamps were entered into the Point of Sale machine and then voided by DEROUEN, with a follow-up "no-sale" to open his cash drawer, thereby under-reporting $60.00.

    7. A covert video surveillance of DEROUEN was initiated on December 21, 2005. A review of the videotape for the period December 21-28, 2005 by the investigators disclosed that DEROUEN failed to report at least 60 transactions during that period for a total of $1,207.56 in postage sales in addition to the aforementioned purchase discussed in paragraph 6, above. Of the 60 transactions, 56 transactions were under-reported using the (scan > void > no-sale) sequence. In addition,

DEROUEN was observed on the videotape removing money from his cash drawer and placing it in his pants pocket on at least 20 occasions.

8. An analysis of the Retail Data Mart database reports reflecting all of DEROUEN's transactions between September 19, 2005, and December 20, 2005, was subsequently performed by the investigators. This analysis revealed a multitude of transactions which had the exact sequence of (scan > void > no-sale) totaling $7,891.37.

9. In summary, the above-discussed investigation has shown that DEROUEN failed to report at least $1,267.56 in postage sales during the six days of monitoring and an additional $7,891.37 prior to video surveillance for a total loss to the United States Postal Service of at least $9,158.93. Moreover, the theft by DEROUEN appears to be ongoing, which will likely increase this total amount.

10. DEROUEN is described as a forty-three year old black male, weighing 210 pounds, 5 foot, 11 inches tall, with brown eyes and black hair.

VI. CONCLUSION

Based on the foregoing, affiant respectfully submits that there is probable cause to believe that DEROUEN has engaged in the crime of theft of government property and misappropriation of postal funds.

Wherefore, affiant respectfully requests that a complaint and a warrant be issued authorizing the arrest of DEROUEN for the above-stated violations of Title 18, United States Code, § 641 and § 1711.

                                                                                                            Jeremy T. Wiesel
                                                                                                            U.S. Postal Inspector
United States Postal Inspection Service
Washington Division

Subscribed and sworn to before

me this _____ day of January, 2006.

_____
THE HONORABLE DEBORAH A. ROBINSON
UNITED STATE MAGISTRATE JUDGE
DISTRICT OF COLUMBIA